UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

BRUCE E. HEATLY,

                Plaintiff,

v.                                                                         Case No. 5:08-cv-33-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                Defendant.
_____/

## ORDER

Plaintiff appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying his applications for a period of disability, disability insurance benefits, and supplemental security income. (Doc. 1.) The Commissioner has answered (Doc. 11), and both parties have filed briefs outlining their respective positions. (Docs. 16 & 18.) For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED**.

## I. PROCEDURAL HISTORY

On July 15, 2004, Plaintiff filed an application for a period of disability, disability insurance benefits, alleging a disability onset of June 21, 2001 (R. 37-40) and an application for supplemental security income, alleging a disability onset date of July 20, 2001. (R. 44, 47, 282-86.) Plaintiff's application was denied initially and upon reconsideration. (R. 27-33, 287-93.) Thereafter, Plaintiff timely pursued his administrative remedies available before the Commissioner and requested a hearing before an Administrative Law Judge ("ALJ"). (R. 34-36.) The ALJ conducted Plaintiff's

administrative hearing on March 1, 2007. (R. 314-28.) The ALJ issued a decision unfavorable to Plaintiff on May 7, 2007. (R. 8-20.) Plaintiff's request for review of the hearing decision by the Social Security Administration's Office of Hearings and Appeals was denied. (R. 4-7.) Plaintiff then appealed to this Court. (Doc. 1.)

## II. **STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla in that the evidence must do more than merely "create a suspicion of the existence of [a] fact," and must include "such relevant evidence as a reasonable person would accept as adequate to support the conclusion."[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient

---

[1] *See* 42 U.S.C. § 405(g).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Richardson v. Perales, 402 U.S. 389, 401(1971); Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982)); *accord* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding court must scrutinize entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding court must also consider evidence detracting from evidence on which Commissioner relied).

reasoning to determine that the Commissioner properly applied the law.[5] The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, he is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in Title 20, Part 404, Subpart P, Appendix 1 of the Code of Federal Regulations, he is disabled.[11] Fourth, if a claimant's impairments do not

---

[5] Keeton v. Dep't Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. See Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] Id. § 404.1520(c).

[11] Id. § 404.1520(d).

prevent him from doing past relevant work, he is not disabled.[12] Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the grids when the claimant has a nonexertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[17] In a situation where both exertional and nonexertional impairments are

---

[12] 20 C.F.R. § 404.1520(e).

[13] Id. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2.
> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.

Id. (internal citations omitted).

[16] Walker, 826 F.2d at 1002. Once the burden shifts to the Commissioner to show that the claimant can perform other work, the grids may come into play. Id.

[17] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Walker v. Bowen, 826 F.2d 996,
(continued...)

found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the grids as a framework to evaluate vocational factors so long as the ALJ introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[21]

### III. SUMMARY OF THE RECORD EVIDENCE

Plaintiff was fifty three (53) years old at the time of the ALJ's decision on May 7, 2007. (R. 8-20, 37.) He has a high school education, and has previous work experience as a concrete block mason. (R. 76, 79, 317.) Plaintiff contends that he has been unable to work since July 20, 2001 due to shoulder, neck, back, hip, and leg pain. (R. 37-40, 75, 92, 317.) Plaintiff is insured for benefits through December 31, 2006. (R. 40.)

**A.**  *Plaintiff's Activities of Daily Living*

---

[17](...continued)
1003 (11th Cir. 1987) ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d 1072, 1077-78 (11th Cir. 1996).

[20] *See* id.

[21] *See* Doughty v. Apfel, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

5

In September 2004, Plaintiff completed a Function Report pursuant to the Commissioner's request, in which he reported the following activities of daily living: caring for two horses, babysitting a three year old child, washing dishes, doing laundry, light housecleaning, and going for walks twice a day. (R. 91-95.) Plaintiff stated that he was capable of walking "down the road and back." (R. 91-94.) However, he reported that he was unable to drive due to his seizures, and that he could not lift more than forty pounds due to pain in his neck and back. (R. 91-96.)

Plaintiff reported that his ability to use his left arm was limited due to pain and numbness. (R. 98.) According to Plaintiff, he was capable of doing activities such as light housecleaning (e.g. vacuuming, mopping, etc.) for very short periods of time (i.e. ten minutes). (R. 100, 107.) Also, he explained that, although he cooked for himself, his ability to cook was limited by his difficulty gripping small objects, and inability to lift heavy items, open jars or use can openers. (R. 107.) Plaintiff also reported being unable to lift his left arm above shoulder height for long periods of time due to pain. (R. 98, 103.) Plaintiff complained that his left arm "gets stuck" when lifted shoulder height or when reaching for something. (R. 98.)

During the hearing on March 1, 2007, (R. 314-28.) Plaintiff testified that he reports to his treating physician, Dr. Peterson, once every six months for treatment of his complaints of chronic pain. (R. 318.) According to Plaintiff, his "biggest problem" is his back pain. (R. 320.) Dr. Peterson prescribed pain medication, which helps "most of the time." (R. 318.)

Plaintiff testified that, despite his pain, he is capable of cooking and light housecleaning. (R. 320-21.) Plaintiff exercises every other day for about ten minutes by walking and using his exercise bicycle. (R. 321.) Plaintiff also "has a little [flower] garden" that he tends as his hobby. (R. 321.) Plaintiff testified that he is capable of lifting 25 to 30 pounds, standing for approximately an hour and a half at a time, walking for about an hour at a time, and sitting still for ten to fifteen minutes at a time. (R. 322.) Plaintiff testified that he is unable to lift very much with his left arm and he has difficulty grasping small objects because his left arm is "really weak" and the thumb in his left hand frequently goes numb. (R. 323.) Plaintiff stated that, over course of day, he needs to lie down for an hour due to his pain. (R. 325.)

**B.**     *The ALJ's Findings*

In the ALJ's review of the record, including Plaintiff's testimony, and medical records from several health care providers, the ALJ determined that Plaintiff's status post cervical fusion is a severe impairment. (R. 13.) While this impairment is severe, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Title 20, Part 404, Subpart P, Appendix 1 of the Code of Federal Regulations. (R. 15.)

The ALJ then found that Plaintiff retained the RFC to perform light work. The ALJ limited Plaintiff to occasional climbing, balancing, stooping, kneeling, crouching, and crawling. (R. 15.) After finding that Plaintiff could not perform his past relevant work as a concrete block mason, the ALJ applied Rules 202.21 and 202.14 of the Medical-

7

Vocational Guidelines (the "grids")[22] as a "framework" and found that Plaintiff was not disabled. (R. 20.)

## IV. **DISCUSSION**

Plaintiff raises two issues in his appeal. First, Plaintiff argues that the ALJ committed legal error by failing to find Plaintiff's chronic pain syndrome to be a severe impairment at step two of the sequential analysis. Second, Plaintiff contends that the ALJ erred by failing to obtain vocational expert testimony at step five of the sequential analysis to address Plaintiff's chronic pain syndrome as a severe nonexertional impairment.

### A.     **The ALJ Did Not Conclude that Plaintiff's Chronic Pain Is a Non-Severe Impairment.**

Plaintiff contends that the ALJ erred by failing to acknowledge Plaintiff's chronic pain as a "severe" impairment at step two of the sequential analysis. According to Plaintiff, his pain affects his ability to work and so the ALJ improperly ignored Plaintiff's chronic pain syndrome at step two because "it skew[ed] the rest of the sequential evaluation by preventing all of the claimant's impairments from being considered in combination." Contrary to the Plaintiff's argument, and as discussed more thoroughly below, the ALJ did in fact acknowledge Plaintiff's complaints of chronic pain and he evaluated its corresponding impact on Plaintiff's ability to work when evaluating Plaintiff's RFC and in making the disability determination. In addition, the ALJ did not conclude that Plaintiff's chronic pain was "non-severe." While it would have been better

---

[22] 20 C.F.R. § 404, subpt. P, app. 2.

had the ALJ made an explicit finding as to the severity of Plaintiff's chronic pain syndrome at step two for the sake of clarity, "the ALJ could not have committed any error at step two because he found that [Plaintiff] had a severe impairment . . . and moved on to the next step in the evaluation, which is all that is required at step two."[23]

To the extent that Plaintiff argues that the ALJ's decision does not make it clear whether the ALJ considered Plaintiff's impairments in combination in making his disability determination, the Court finds that the ALJ's written decision properly addressed Plaintiff's impairments in accord with Eleventh Circuit law.

Where a claimant alleges more than one impairment, the Commissioner has a duty to consider the cumulative effects of the impairments in making the determination as to whether the claimant is disabled.[24] According to the Eleventh Circuit, this burden is met where the ALJ expressly states that he has considered all of the medical evidence and concludes that Plaintiff is not suffering from "an impairment, or a combination of impairments listed in Appendix 1, Subpart P."[25] Similarly, an ALJ's statement that "based upon [his] thorough consideration of all evidence, [he] conclude[d] that the [claimant was] not suffering from any impairment, or combination of impairments of sufficient severity to prevent him from engaging in any substantial gainful activity for a

---

[23] (R. 13-15.); Council v. Barnhart, 127 Fed. Appx. 473, No. 04-13128, slip op. at 4 (11th Cir. Dec. 28, 2004) (table); accord Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987); see also Maziarz v. Sec. of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987).

[24] Jones v. Dep't of Health & Human Servs., 941 F.2d 1529, 1533 (11th Cir. 1991) (citing Hudson v. Heckler, 755 F.2d 781, 785 (11th Cir. 1985), aff'd on other grounds, Sullivan v. Hudson, 490 U.S. 877 (1989)).

[25] Id.

period of at least twelve continuous months" clearly evidences that the ALJ properly considered the claimant's impairments in combination.[26]

After extensively summarizing the medical evidence—including discussing Plaintiff's chronic pain and his diagnosis of chronic pain syndrome—the ALJ concluded that Plaintiff's status post cervical fusion constituted a "severe" impairment at step two of the sequential analysis. (R. 13-15.) The ALJ then proceeded to step three of the sequential analysis where he concluded that, "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. 15.) In his subsequent assessment of Plaintiff's RFC, the ALJ stated that Plaintiff's RFC was based upon his "consideration of the entire record" as well as "all symptoms and the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." (R. 15.) Accordingly, consistent with Eleventh Circuit precedent, these statements by the ALJ are more than sufficient to demonstrate that he properly considered Plaintiff's impairments in combination.[27]

---

[26] Wheeler v. Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986).

[27] *See e.g.*, Nigro v. Astrue, No. 8:06-cv-2134-T-MAP, 2008 WL 360654, at *2 (M.D. Fla. Feb. 8, 2008).
> Even if it might have been a better practice for the ALJ to make more explicit findings regarding the severity or non-severity of the Plaintiff's other impairments, the ALJ thoroughly discussed the evidence relating to all of the Plaintiff's impairments and took the combination of the Plaintiff's impairments into account in determining her residual functional capacity.

Id.

**B.     The ALJ Properly Relied Upon The Grids In That The ALJ Concluded That Plaintiff's Chronic Pain Does Not Significantly Restrict His Ability to Do Basic Work Activities.**

Plaintiff argues that his chronic pain syndrome is a "severe nonexertional impairment" that significantly restricts his ability to do basic work activities[28] and so should have been—but was not—considered by the ALJ at step five of the sequential analysis. Specifically, Plaintiff challenges the ALJ's decision not to obtain vocational expert testimony. In opposition, the Commissioner argues that the ALJ properly considered Plaintiff's chronic pain in determining that Plaintiff's condition did not limit Plaintiff in performing a wide range of work at the light exertional level.

At step five of the sequential analysis, the burden of proof shifted to the Commissioner to establish that Plaintiff could perform other work that exists in the national economy.[29] In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.[30] This burden may sometimes be met through exclusive reliance on the grids when each variable on the appropriate grid accurately describes the claimant's situation.[31] Where a claimant has one or more nonexertional limitations, the

---

[28] Basic work activities are "the abilities and aptitudes necessary to do most jobs" and include: (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b).

[29] Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

[30] See Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).

[31] See Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987).

Commissioner is not required to obtain testimony from a vocational expert so long as the claimant's nonexertional limitations do not *significantly* limit basic work skills.[32] In the Eleventh Circuit, a nonexertional limitation "significantly limits" basic work skills if it precludes a claimant from performing a "wide range" of work at a given level.[33]

The ALJ found Plaintiff capable of performing the exertional demands of light work,[34] subject to some postural limitations. According to the ALJ, Plaintiff's postural limitations had little to no effect on the occupational base of unskilled light work. Thus, the ALJ concluded that Plaintiff did not have any nonexertional impairments which significantly limited Plaintiff's ability to carry out basic work skills.

Plaintiff simply argues that because there was evidence that Plaintiff had some measure of a pain impairment, the ALJ was precluded from relying upon the Grids and was required to obtain vocational expert testimony at step five of the sequential analysis. The missing link in Plaintiff's argument is that he has failed to identify in his brief any functional limitations allegedly attributable to his chronic pain syndrome and merely points to the diagnosis as evidence that the Plaintiff has a severe nonexertional

---

[32] Phillips v. Barnhart, 357 F.3d 1232, 1242 (11th Cir. 2004). Specifically, in Murray v. Heckler, the Eleventh Circuit held that "nonexertional limitations can cause the grid to be inapplicable only when the limitations are severe enough to prevent a wide range of gainful employment at a designated level." 737 F.2d 934, 935 (11th Cir. 1984).

[33] Phillips, 357 F.3d 1232, 1242 (11th Cir. 2004) (citing Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995)).

[34] The guidelines define light work as follows:
Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [Plaintiff] must have the ability to do substantially all of these activities.
20 C.F.R. §§ 404.1567(b); 416.967(b).

impairment. It is well settled that in the absence of evidence of functional limitations attributable to a medical condition, a diagnosis alone is insufficient to support a finding that the condition is disabling.[35]

In the instant case, the ALJ gave thorough and proper consideration to the medical and testimonial evidence of Plaintiff's pain. Pain and other symptoms reasonably attributed to a medically determinable impairment are relevant evidence for the ALJ to consider when determining a claimant's capacity to do work.[36] "A symptom in itself is neither exertional or nonexertional, rather it is the nature of the functional limitations or restrictions caused by an impairment-related symptom that determines whether the impact of the symptoms is exertional, nonexertional, or both."[37]

In order to establish a disability based on subjective complaints of pain, the claimant must first establish that he has one or more medically determinable impairments that could reasonably be expected to produce the alleged pain.[38] Upon finding that Plaintiff suffered from such an impairment, the ALJ proceeded to address Plaintiff's complaints of pain to determine the extent to which it limits Plaintiff's ability to do work. Where an ALJ discredits subjective testimony, he must articulate explicit and

---

[35] SSR 83-14; Moore v. Barnhart, 405 F.3d 1208 (11th Cir. 2005); *see also* McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986) ("[T]he severity of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality.").

[36] SSR 96-8p.

[37] SSR 96-4p.

[38] SSR 96-3p; Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir.1991).

13

adequate reasons for doing so and the reasons must be supported by substantial evidence.[39]

In this case, the ALJ considered all of the evidence of record and found that, although Plaintiff had a medically determinable impairment that could reasonably be expected to cause the severity of the pain alleged, Plaintiff's statements concerning the intensity, persistence and limiting effects of the pain were not entirely credible. (R. 16.) The ALJ articulated two reasons for finding Plaintiff's pain testimony only partially credible both of which are supported by substantial evidence.

One of the reasons the ALJ gave for finding Plaintiff's pain testimony to be only partially credible was that Plaintiff's reported activities of daily living were inconsistent with the extent of the disabling pain alleged by Plaintiff. Consistent with the requirements of Social Security Ruling 96-7p,[40] the ALJ appropriately discussed Plaintiff's activities of daily living and noted that Plaintiff's own testimony established that he was able to adequately perform his activities of daily living and capable of lifting 25 to 30 pounds. Plaintiff also testified that he was able to cook, vacuum, do laundry, do light housekeeping, and care for two horses. In Plaintiff's function report, Plaintiff reported that he was capable of babysitting a three year old child twice a week for eight hours at

---

[39] *See* Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir.1987); Jones v. Dep't of Health & Human Servs., 941 F.2d 1529, 1532 (11th Cir.1991).

[40] In addition to the objective medical evidence, when assessing the credibility of an individual's statement, the adjudicator must consider, the individual's daily activities; location, duration, frequency and intensity of the pain or symptoms; factors that aggravate the symptoms; effectiveness and side effects of medication to alleviate the pain or symptoms; treatment; any measures the individual uses to relieve pain or symptoms; and any other factors concerning the individual's functional limitations due to pain or other symptoms. SSR 96-7p.

a time so long as he did not have to lift the child. Plaintiff testified that he regularly exercised by walking or using his exercise bicycle. In addition, Plaintiff testified that he maintains a little flower garden as a hobby.

In sum, Plaintiff's self-reported activities of daily living are inconsistent with Plaintiff's allegations of incapacitating limitations and pain. As such, Plaintiff's activities of daily living *support* rather than contradict the ALJ's assessment that Plaintiff is capable of light work subject to some postural limitations.

The second reason the ALJ gave for discrediting Plaintiff's pain testimony was that "[t]he medical evidence does not support a conclusion that [Plaintiff] is totally disabled." In his written decision, the ALJ acknowledged Plaintiff's severe back injury in July 2001 and engaged in an extensive discussion of the medical records documenting Plaintiff's subsequent medical treatment – including Plaintiff's subjective complaints of pain and diagnosis with chronic pain syndrome. In reaching his conclusion that Plaintiff was capable of performing a wide range of unskilled light work, the ALJ noted that he gave significant weight to the opinions of two non-examining state agency physicians—Dr. Eric Puestow and Dr. Reuben E. Brigety—because they were consistent with other medical opinions and the record as a whole.

Contrary to Plaintiff's position that his pain "significantly restrict[s] his ability to do basic work activities," both Dr. Puestow and Dr. Brigety opined that Plaintiff was capable of the physical exertional demands of light work with only some postural limitations. In October 2004, Dr. Puestow reviewed Plaintiff's medical records and found Plaintiff capable of lifting or carrying ten pounds frequently and twenty pounds occasionally;

15

sitting, standing or walking about six hours in an eight hour work day; balancing and climbing ramps or stairs occasionally; but never climbing ladders, ropes or scaffolds. Other than finding Plaintiff should avoid concentrated exposure to hazards, Dr. Puestow opined that Plaintiff had no other functional limitations. In evaluating Plaintiff's physical residual functional capacity, Dr. Puestow reviewed medical records associated with Plaintiff's hospitalization in July 2001, surgery in August 2001, as well as Plaintiff's two subsequent consultative examinations with Dr. Edward L. Demmi. In support of his opinion, Dr. Puestow noted that Plaintiff had made a "good recovery from neck surgery." (R. 173-78.)

Dr. Puestow's assessment that Plaintiff's condition had stabilized by October 2004 is supported by the fact that, during Dr. Demmi's consultative examination of Plaintiff approximately a year after the surgery, Dr. Demmi noted that Plaintiff's symptoms had reportedly "leveled off." And although Dr. Demmi's examinations of Plaintiff provide evidence that Plaintiff was experiencing pain, Dr. Demmi's clinical findings did not reveal the existence of associated functional limitations in excess of those included in Dr. Puestow's assessment of Plaintiff's residual functional capacity. (R. 184-92.)

For example, Plaintiff told Dr. Demmi that his neck pain was so great that he had difficulty grasping and holding onto objects, but upon examination of Plaintiff, Dr. Demmi observed only slightly diminished grip strength bilaterally. Dr. Demmi further noted that sensation in Plaintiff's fingertips was intact and Plaintiff's ability to engage in fine manipulation was unimpaired. And while examination of Plaintiff's cervical and lumbar

spine revealed some decreased range of motion and tenderness upon palpation of the posterior cervical spine and lumbosacral areas, it did not reveal any muscle spasms, swelling or deformity. (R. 184-88, 191-92.) Supine and seated straight leg testing was normal.[41] Further, although Plaintiff demonstrated a slightly antalgic gait he was able to walk without an assistive device. Dr. Demmi examined Plaintiff on two occasions for Plaintiff's complaints of pain in his neck and low back, and discomfort in his left shoulder and hip. Notably, neither of Dr. Demmi's corresponding reports identified any functional limitations associated with Plaintiff's pain.

Dr. Brigety, the second non-examining state agency physician, also concluded that Plaintiff was capable of light work with some postural limitations. After reviewing Plaintiff's medical records in June 2005, including a consultative examination report from Dr. Dantaluri P. Raju, Dr. Brigety found Plaintiff capable of lifting or carrying ten pounds frequently and twenty pounds occasionally; and sitting, standing or walking about six hours in an eight hour work day. Dr. Brigety further found that Plaintiff was capable of occasionally climbing, balancing, stooping, kneeling, crouching, and crawling. Dr. Brigety opined that, secondary to Plaintiff's diagnosis of status post cervical spine fusion, Plaintiff was limited to occasional overhead reaching bilaterally. Otherwise, Plaintiff was found to have no visual or communicative limitations and Plaintiff's only environmental limitation was to avoid concentrated exposure to heights.

---

[41] Straight leg raise testing is used to detect organic causes of low back pain. Craig Liebenson, *Vleeming's Active SLR Test as a Screen for Lumbopelvic Dysfunction*, DYNAMIC CHIROPRACTIC (Feb. 24, 2003).

In rendering his opinion, Dr. Brigety noted Plaintiff's neck and low back pain as well as Plaintiff's diagnosis of chronic pain syndrome. (R. 224-31.)

Further support for the ALJ's assessment of Plaintiff's RFC is the fact that it is largely consistent with the medical opinions of physicians who examined Plaintiff including Dr. Timothy N. Peterson, Plaintiff's treating physician, and Dr. Raju, a consulting examining physician.

Although Dr. Peterson's observations confirm that Plaintiff experienced neck and back pain, his progress notes do not reflect any limitations associated with the pain. Further, Dr. Peterson prepared a medical source statement in July 2006 that is largely consistent with the ALJ's assessment that Plaintiff was capable of the exertional demands of light work with some postural limitations.

During Plaintiff's July 2004 office visit, Dr. Peterson noted that Plaintiff appeared to be very uncomfortable and had difficulty sitting in one position and getting up several times during the examination. However, in Dr. Peterson's subsequent medical source statement, he opined that Plaintiff was capable of walking for 4-5 hours in an eight hour workday, and that sitting was not affected by Plaintiff's impairment. (R. 254-55.) Further, although Dr. Peterson's examinations of Plaintiff's back revealed a significant amount of paraspinous spasm, hyperreflexivity on the left side, and t pain with gentle touch, Dr. Peterson opined in his medical source statement that Plaintiff was capable of lifting and carrying ten to twenty pounds; and climbing, balancing, stooping, crouching, kneeling, and crawling occasionally. (R. 254-55.) While Dr. Peterson also opined that Plaintiff's pain affected his ability to reach, push and pull, there is nothing in Dr. Peterson's

18

progress notes nor is there any opinion from Dr. Peterson that Plaintiff was significantly limited in his ability to perform those activities.

In May 2005, Plaintiff saw Dr. Dantaluri P. Raju for a consultative examination at the request of the Commissioner. Examination revealed limited range of motion in Plaintiff's cervical and lumbar spine but no paravertebral muscle spasms. Plaintiff demonstrated full range of motion and normal dexterity in his upper and lower extremities with only a slightly decreased grip strength of 4/5. Dr. Raju noted that, although Plaintiff had a stiff gait and was limping on the right side, Plaintiff walked unassisted and was capable of getting on and off of the examination table. Examination of Plaintiff's neurological system revealed no muscular wasting and no gross deficits with motor and sensory functions intact. Dr. Raju did not assign any functional limitations as a result of his clinical findings.

In sum, the ALJ's conclusion that Plaintiff's pain was not so severe that it eroded Plaintiff's ability to engage in a wide range of light work is fully supported by evidence of Plaintiff's activities of daily living as well as the medical evidence of record. This conclusion is underscored by the fact that the Plaintiff failed to identify any functional limitation that significantly compromised Plaintiff's ability to engage in basic work skills. As such, the ALJ adequately addressed Plaintiff's chronic pain and made a credibility determination fully supported by substantial evidence. Accordingly, because Plaintiff's nonexertional impairments did not erode the work base for unskilled light work the ALJ did not err in relying upon the grids instead of obtaining the testimony from a VE.

## V. CONCLUSION

In view of the foregoing, it is hereby **ORDERED** that the decision of the Commissioner is **AFFIRMED** and the Clerk is directed to enter final judgment in favor of the Commissioner consistent with this Order and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on March 19, 2009.

*[signature]*
GARY R. JONES
United States Magistrate Judge

Copies to:
All Counsel